UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

ALLEN COLVIN,

                    Petitioner,

          -vs-

J. BUNN, Superintendent,
Wyoming Correctional Facility,

                    Respondent.

No. 15-CV-00323(MAT)
**DECISION AND ORDER**

─────────────────────────────

## I.    Introduction

*Pro se* petitioner Allen Colvin ("petitioner" or "Colvin") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being unconstitutionally detained in respondent's custody. Petitioner is incarcerated pursuant to a judgment entered against him in New York State Supreme Court, Monroe County (the "Trial Court"), following a jury verdict convicting him of first-degree robbery, second-degree robbery, and second-degree criminal possession of a weapon. On April 3, 2009, petitioner was sentenced, as a second violent felony offender, to an aggregate prison term of 12 years, with five years of post-release supervision.

In the petition, petitioner asserts that his detention is unconstitutional because (1) the prosecution failed to disclose favorable evidence, (2) he was denied the effective assistance of trial counsel, (3) newly discovered evidence demonstrates that he is actually innocent of the crime for which he was convicted, and

(4) the prosecution engaged in misconduct.  For the reasons discussed below, the Court finds that petitioner has not shown he is entitled to relief.

## II.  Background

### A.  The Underlying Robbery

On September 27, 2007, Brandon Taylor ("Taylor"), having just left his girlfriend's apartment, was waiting for a bus inside the bus stop shelter located at 2052 East Main Street in Rochester. Before the Trial Court, Taylor testified that he was standing alone in the bus stop shelter when a tan Saturn sedan drove slowly past him and turner right onto Kansas Street.  Taylor observed four men in the Saturn - a Caucasian driver and three African-American passengers - all of whom looked at him as they drove past.

Two minutes later, petitioner and Jerrod Dozier ("Dozier") walked rapidly toward Taylor from Kansas Street.  Petitioner and Dozier asked Taylor what time the bus was coming and sat down behind him.  Dozier then pointed a black handgun in Taylor's fast and repeatedly told him to get down on the ground.  Taylor testified that he laid down on his stomach, at which point Dozier told petitioner to take Taylor's necklace, a gold chain with a pendant depicting Jesus' head.  Petitioner removed the necklace from Taylor's neck and, at Dozier's direction, searched Taylor's pockets, removing a black Nautica wallet, a one-day bus pass, and Taylor's keys.  Petitioner kept the wallet but threw the one-day

bus pass and the keys on the ground.  Taylor further testified that petitioner and Dozier then ran down Kansas Street.  Taylor picked up his keys and the one-day bus pass, ran back to his girlfriend's house to drop of his backpack, and then ran down Kansas Street in an attempt to locate petitioner and Dozier.  After he was unable to find petitioner and Dozier, Taylor spoke to the police.

Rochester Police Department ("RPD") Patrol Sergeant Daryl Gaston ("Sergeant Gaston") testified that he heard the robbery reported over the police radio.  Sergeant Gaston subsequently observed the tan Saturn at a convenience store on Culver Road.  He saw petitioner and two other men exit the store and enter the Saturn.  Sergeant Gaston followed the Saturn as it left the convenience store, and then pulled it over.  Sergeant Gaston testified that as he sat in his patrol car waiting for backup, he observed Dozier turning around to look at him in a manner that seemed suspicious.  Sergeant Gaston subsequently approached the Saturn and took petitioner and Dozier into custody.

RPD Office Carlos Alvarado ("Officer Alvarado") arrived at the scene around this time.  Officer Alvarado put Dozier in the back seat of his patrol car, then assisted Sergeant Gaston in taking the other two individuals in the Saturn into custody. Officer Alvarado observed a half-full bottle of beer on the floor in the back seat of the car.  Sergeant Gaston returned to the car to recover the bottle, whereupon he observed the grip of a gun sticking out from

under a black hooded sweatshirt in the back seat. Sergeant Gaston and Officer Alvarado recovered a loaded, operable Llama semiautomatic .380 caliber pistol from under the sweatshirt. Officer Alvarado further testified that, as he sat in the driver's seat of his patrol car, he noticed Dozier fidgeting in the back seat, and subsequently witnessed Dozier attempting to put Taylor's necklace into his pocket.

Officer Alvarado and Sergeant Gaston brought petitioner and Dozier back to the bus stop, where Taylor identified Dozier as the individual who had pointed a gun at him and identified the necklace Officer Alvardo had recovered from Dozier as his.

### B. Petitioner's Interview by the RPD

Petitioner was subsequently interviewed by RPD Investigator Michael Houlihan ("Investigator Houlihan") and RPD Investigator Brian Tucker ("Investigator Tucker"). Prior to this interview, petitioner had been given *Miranda* warnings and had agreed to speak to the police without counsel present. Petitioner stated that he had been present when Dozier, who was his girlfriend's brother, robbed a man at the bus stop, but denied participating in the robbery. The police recovered a red October 2007 bus pass from petitioner, which Taylor subsequently confirmed had been in his wallet when it was stolen. Petitioner claimed that Dozier had given him the red October 2007 bus pass.

Investigator Tucker also interviewed Dozier. Dozier initially denied participating in the robbery and claimed to have purchased Taylor's necklace from someone on the street. However, after the police showed him petitioner's statement (as well as a fabricated statement allegedly from the Saturn's driver), Dozier changed his story. He claimed that the driver, Lane Thatcher ("Thatcher") had noticed Taylor's gold necklace when they drove past him and suggested that they rob Taylor. Dozier further claimed that he had watched petitioner commit the robbery, and that the gun used in the robbery belonged to Thatcher.

The police impounded the Saturn and ultimately executed two search warrants on it. During these searches, the police found Taylor's black Nautica wallet in the front-seat center console and Taylor's learner's permit in the pocket of a black coat found on the floor of the back seat.

### C. Indictment, Suppression Hearing, and Trial

On December 21, 2007, a Monroe County grand jury indicted petitioner and Dozier for having allegedly acted in concert to commit first-degree robbery, second-degree robbery, and second-degree criminal possession of a weapon.

Prior to trial, petitioner moved to suppress his statements to law enforcement and the tangible evidence seized from him. The Trial Court (Valentino, J.) conducted a suppression hearing on May 12, 2008. Investigator Houlihan testified at the suppression

-5-

hearing. During defense counsel's cross-examination of Investigator Houlihan, he testified that he had asked petitioner, who had recently moved to Rochester from Utica, whether he knew anything about a police shooting that had occurred in Utica. Investigator Houlihan further testified that petitioner had told him he did not know anything about that shooting. Defense counsel then asked Investigator Houlihan whether he had told petitioner that he wanted cooperation from him in helping solve the Utica shooting, and the prosecution objected on the grounds of relevancy. Defense counsel argued that the question was relevant because the questioning about the Utica shooting had occurred prior to petitioner receiving his *Miranda* warnings and making a statement to the police. The Trial Court sustained the objection.

The Trial Court ultimately denied the suppression motion. The Trial Court ruled that Sergeant Gaston had acted appropriately, based on his reasonable suspicion that petitioner and Gaston had committed a robbery. The Trial Court further found that the police were justified in handcuffing and frisking petitioner and Dozier because they had reason to believe a weapon had been used in that robbery, that the police had probable cause to arrest the four occupants of the Saturn upon seeing a handgun in plain view, and that the identification procedure by which Taylor identified Dozier was not unduly suggestive. The Trial Court also held that petitioner and Dozier had knowingly and intentionally waived their

*Miranda* rights and that their statements to the police investigators were voluntary.

On June 18, 2008, Dozier pleaded guilty to first-degree robbery. During his plea allocution, Dozier stated that he and petitioner had committed the robbery and that he had pointed a gun at Taylor while petitioner stole Taylor's necklace and wallet. Dozier was sentenced to five years in prison on July 3, 2008.

Petitioner's trial commenced on February 3, 2009. After the People rested, petitioner, through his counsel, sought to introduce into evidence an unsigned, undated note purportedly written by Dozier. The note stated:

> I committed this crime not you so stop frontin b*tch n*gga I coped out to first degree robbery and took the minimum which is five years flat so stop frontin tellin n*ggas I taking the stand on you you b*tch a** n*gga you think if I was taking the stand on you I would still be taking 5 dumb a**! You f*ckin stupid for not taking 5 when they offered it to you that's why ya dumb a** bout to get 15 years p*ssy.

(Docket No. 14 at 36)(grammar and spelling errors in the original) (hereinafter the "Dozier Note"). Petitioner sought to have his girlfriend, Brooke Dozier, testify that Dozier was her brother and that the note was in his handwriting. The Trial Court denied petitioner's application to introduce the note, finding that petitioner had failed to establish the applicability of any exception to the rule against hearsay.

On February 5, 2009, the jury found petitioner guilty of all the charges against him. On April 3, 2009, the Trial Court sentenced petitioner, as a second violent felony offender, to an aggregate sentence of 12 years in prison, with five years of post-release supervision.

**D.  Direct Appeal**

Petitioner filed a direct appeal of his conviction, arguing that (1) the Trial Court should have permitted him to introduce the Dozier Note as a declaration against penal interest and (2) the Trial Court erred in limiting the cross-examination of Investigator Houlihan at the suppression hearing. On December 27, 2013, the Appellate Division, Fourth Department (the "Appellate Division") unanimously confirmed petitioner's conviction. The Appellate Division found that the Dozier Note was inadmissible hearsay, because petitioner failed to establish that it was written before Dozier pled guilty and therefore failed to establish that it was against his penal interest. The Appellate Division further found that petitioner's argument related to the cross-examination of Investigator Houlihan was unpreserved and without merit.

Petitioner sought leave to appeal to the New York Court of Appeals (the "Court of Appeals") solely on the ground that the Trial Court should have permitted additional cross-examination of Investigator Houlihan at the suppression hearing. The Court of Appeals denied petitioner's application on March 11, 2014.

**E.  State Court Collateral Review**

In July 2011, petitioner filed a *pro se* motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10. Petitioner contended that (1) he had newly discovered evidence (namely, an affidavit from Dozier) showing that he was actually innocent, and (2) trial counsel was ineffective because he failed to call Dozier as a defense witness.  The affidavit from Dozier was dated April 15, 2009 (hereinafter the "April 2009 Dozier Affidavit), and stated that petitioner, who was his friend, had nothing to do with the robbery and had no knowledge of what was going on.  Dozier further stated that he had previously implicated petitioner in the robbery because he wanted to "get back at him for telling on [Dozier]."

The Trial Court denied petitioner's motion, finding that the affidavit from Dozier did not constitute newly discovered evidence, inasmuch as it was impeachment material, at best.  The Trial Court also rejected petitioner's assistance ineffective of counsel claim, finding that it was procedurally barred because it should have been raised on direct appeal.  Petitioner sought leave to appeal the denial of his § 440.10 motion, which the Appellate Division denied on February 8, 2012.

**F.  The Instant Petition**

Petitioner commenced this action on April 13, 2015, arguing that he is entitled to a writ of habeas corpus because: (1) the

prosecution failed to disclose favorable evidence - specifically, by failing to introduce at his trial two photos that had been shown to the grand jury, by failing to admit the Dozier Note into evidence, by objecting to the cross-examination of Investigator Houlihan at the suppression hearing, and by failing to call a handwriting expert regarding the Dozier Note; (2) he was denied the effective assistance of trial counsel; (3) newly discovered evidence demonstrates that he is actually innocent of the crime for which he was convicted; and (4) the prosecution engaged in misconduct by failing to introduce photographs to the trial jury that had been shown to the grand jury and by failing to call a handwriting expert regarding the Dozier Note. For the reasons discussed below, the Court finds that petitioner has not shown he is entitled to relief.

### III. Discussion

#### A.   Procedurally Barred Claims

As a threshold matter, respondent contends that certain of petitioner's claims are unexhausted and procedurally barred. Specifically, respondent contends that petitioner failed to exhaust his claims that: (1) the prosecution improperly failed to introduce at trial two photographs that had been shown to the grand jury; (2) the trial court improperly excluded the Dozier Note; (3) the prosecution should have called a handwriting expert regarding the Dozier Note; and (4) trial counsel was ineffective for having

failed to argue for the admissibility of the Dozier Note, failed to argue that the two photographs that had been admitted to the grand jury but not at trial were pertinent to his defense, and failed to counter the prosecution's objection to his cross-examination of Investigator Houlihan. Respondent further argues that, because these arguments pertain to matters of record and were not raised on direct appeal, they are procedurally barred from habeas review.

It is well-established that a state inmate who seeks federal habeas review must first exhaust his available state court remedies. 28 U.S.C. § 2254(b)(1). This is so because "interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005). "In order to satisfy the exhaustion requirement, a habeas petitioner must give the state courts a fair opportunity to review the federal claim and correct any alleged error." *Ortiz v. Heath*, 2011 WL 1331509, at *6 (E.D.N.Y. Apr. 6, 2011).

A claim may be deemed exhausted where further review is procedurally barred under state law. *See id.* ("[B]ecause the exhaustion requirement 'refers only to remedies still available at the time of the federal petition, it is [also deemed] satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law.'") (quoting *Coleman v. Netherland*, 518 U.S. 152, 161 (1996)). However, "[w]here a

procedural bar gives rise to exhaustion . . . it also 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'" *Id.* (quoting *Netherland*, 518 U.S. at 162). "For a procedurally defaulted claim to escape this fate, the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice, (*i.e.,* the petitioner is actually innocent).*" Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).

Here, the Court agrees with respondent that the claims identified above are procedurally barred. With respect to each of them, petitioner either failed to include them in his direct appeal or failed to include them in his application for leave to appeal to the Court of Appeals. Petitioner has failed to identify any justification for having failed to raise these issues on direct appeal. Accordingly, under New York law, further review of these claims is procedurally barred. *See Ortiz*, 2011 WL 1331509, at *7 (explaining that, under New York law, unjustifiable failure to raise a claim on direct appeal forfeits the right to collateral relief). As such, this Court cannot grant habeas relief with respect to these claims unless petitioner can meet the high bar for granting relief on a procedurally defaulted claim. For the reasons discussed below, the Court finds that he cannot.

### 1.  Actual Innocence

Petitioner contends that he is actually innocent of the crime for which he was convicted. It is not clear from the petition

whether petitioner seeks to assert a freestanding claim of actual innocence or whether he advances this claim in an attempt to overcome the procedural bar. In either event, however, petitioner's argument is without merit.

To the extent petitioner is attempting to assert a freestanding claim of actual innocence, no such claim has ever been recognized by the Supreme Court. *See, e.g., McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). However, this Court (and others in the Second Circuit) have generally concluded that "a freestanding actual innocence claim does not constitute a cognizable ground for habeas relief." *Burton v. Conway*, 2011 WL 839733, at *3 (W.D.N.Y. Mar. 7, 2011) (internal quotation omitted). Moreover, even assuming that a freestanding claim of actual innocence were cognizable, petitioner has failed to satisfy "whatever burden a hypothetical freestanding innocence claim would require," (*id.*), for the reasons discussed below.

The Supreme Court held in *Schlup v. Delo*, 513 U.S. 298 (1995), that actual innocence may excuse a procedural bar if the petitioner can show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. In *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court explained that, assuming a freestanding claim of actual innocence were cognizable, it woild "requir[e] more convincing proof of innocence than *Schlup*." *Id.* at 555. In other words, "a habeas

petitioner presenting an actual innocence claim as a basis for habeas relief must establish proof more indicative of innocence than would be required by *Schlup* if that petitioner were trying to overcome a procedural bar with a 'gateway' actual innocence claim." *Burton*, 2011 WL 839733 at *4.

Here, petitioner cannot even satisfy the *Schlup* standard. Under *Schlup*, the Court must consider "whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record." *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004). The evidence identified by petitioner in this case (namely, the April 2009 Dozier Affidavit) does not satisfy these requirements.

The April 2009 Dozier Affidavit is wholly inconsistent with Dozier's prior statement to the police, as well as his plea allocution, and thus constitutes recantation testimony. "Both as a matter of state and federal law, recantations are considered with great skepticism." *Dixon v. Conway*, 613 F. Supp. 2d 330, 386 (W.D.N.Y. 2009); *see also Channer v. Warden Leslie E. Brooks*, 2001 WL 34056850, at *6 (D. Conn. Jan. 25, 2001), *aff'd sub nom. Channer v. Brooks*, 320 F.3d 188 (2d Cir. 2003) ("Both federal and state courts view recantations with suspicion."). In this particular case, the circumstances surrounding Dozier's recantation further enhance the unreliability of his statements - in particular, the fact that Dozier and petitioner are friends and petitioner was dating Dozier's sister are significant indicators that Dozier may have been motivated by a desire to aid petitioner.

Moreover, the 2009 Dozier Affidavit is flatly contradicted by Taylor's trial testimony. In the 2009 Dozier Affidavit, Dozier claims that petitioner went to the bus stop before Dozier, that petitioner was sitting down in the bus stop shelter when Dozier approached, and that Dozier acted alone in committing the robbery. However, Taylor testified that he was alone in the bus stop shelter when he was approached by two individuals and that Dozier pointed a gun at him while the other individual emptied his pockets. In short, the 2009 Dozier Affidavit is "overwhelmed by the weight of other evidence [such] that it is insufficient to raise a question as to [the] petitioner's factual innocence." *Menefee*, 391 F.3d at 162.

For the foregoing reasons, petitioner cannot meet the standard set forth in *Schlup* to permit review of his procedurally barred claims. Petitioner therefore also cannot meet the higher standard that would be necessary to sustain a freestanding actual innocence claim, assuming such a claim were cognizable.

## 2. Omission of Two Photographs at Trial

Petitioner contends that the prosecution failed to produce favorable evidence to him, because two photographs that were shown to the grand jury were not admitted at trial. Plaintiff has not shown cause for failing to raise this argument on direct appeal, nor can he show any prejudice, because the claim is meritless.

With respect to the issue of cause, "[c]ause means some impediment" to having brought the claim on direct appeal." *Menefield v. United States*, 187 F. Supp. 2d 65, 66 (N.D.N.Y. 2002).

In this case, although petitioner contends that he did not "realize that [the alleged failure to introduce the two photographs] was an issue" until after he completed his direct appeal, he has failed to identify any objective impediment to his having raised the issue. Accordingly, he has not demonstrated cause for having failed to pursue the issue.

Petitioner also cannot show prejudice, because his claim is meritless. As a threshold matter, petitioner has failed to provide any record support whatsoever for his claim that different photographic evidence was shown to the grand jury and the trial jury. Even assuming that the prosecution failed to show the trial jury all the photographs it showed the grand jury, petitioner has failed to provide any information regarding the alleged contents of the allegedly missing photographs, nor has he specified how these photographs would have supported his claim of innocence.

"[I]n habeas cases the petitioner bears the burden of establishing that he is entitled to habeas relief." *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 350 (N.D.N.Y. 2013); *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t is the petitioner who bears the burden of proving that he is being held contrary to law[.]"). Petitioner has inarguably failed to meet this burden with respect to his claim related to the photographs shown to the grand jury. Accordingly, he has not shown prejudice sufficient to overcome the procedural bar.

### 3.  Exclusion of the Dozier Note

Petitioner argues that the Trial Court erred in excluding the Dozier Note.  Although petitioner raised this argument before the Appellate Division, he did not include it in his request for leave to appeal to the Court of Appeals.  Petitioner has not set forth any cause for this failure.  Moreover, he cannot show any prejudice relative to this claim, because it is without merit.

The Trial Court excluded the Dozier Note because it was inadmissible hearsay.  The Appellate Division upheld this determination, explaining that, contrary to petitioner's arguments, he had failed to establish that the Dozier Note constituted a statement against penal interest.  In particular, the Appellate Division explained that there was no evidence that the Dozier Note had been written prior to Dozier's guilty plea, and that there was therefore no basis to conclude that it was against his penal interest to confess to having committed the robbery.

The Appellate Division's determination comported with New York State law, under which:

> before statements of a nontestifying third party are admissible as a declaration against penal interest, the proponent must satisfy the court that four prerequisites are met: (1) the declarant must be unavailable to testify by reason of death, absence from the jurisdiction, or refusal to testify on constitutional grounds; (2) the declarant must be aware at the time of its making that the statement was contrary to his penal interest; (3) the declarant must have competent knowledge of the underlying facts; and (4) there must be sufficient competent evidence independent of the declaration to assure its trustworthiness and reliability.

*People v. Brensic*, 70 N.Y.2d 9, 15 (1987). Because the Dozier Note was undated, petitioner failed to meet his burden of proving that Dozier knew at the time of his statement that it was contrary to his penal interest. The Appellate Division's decision was therefore free from error under state law, and petitioner can only obtain habeas relief if he can show that New York's hearsay rules are ""arbitrary or disproportionate to the purposes [they are] designed to serve, meaning that [they] . . . infringe[] upon a weighty interest of the accused." *Molina v. Graham*, 2014 WL 287608, at *8 (W.D.N.Y. Jan. 24, 2014) (internal quotation omitted). Petitioner has not even attempted to make such a showing here, nor could he successfully do so. *See id*. (finding no impropriety in a New York court's application of New York's hearsay rule).

In sum, petitioner's claim related to the exclusion of the Dozier Note is procedurally barred and without merit in any event. Accordingly, habeas relief is not warranted on this basis.

### 4. Failure to Call a Handwriting Expert

Petitioner also argues in the instant petition that the prosecution improperly failed to call a handwriting expert with respect to the Dozier Note. This claim was not raised on direct appeal, and is therefore procedurally barred. Moreover, it is clearly and entirely without merit. The Dozier Note was not excluded due to doubts about its author, but because even assuming Dozier had written it, it constituted inadmissible hearsay. As such, the testimony of a handwriting expert would have added

nothing to the proceeding. Petitioner also has not identified any authority for the proposition that the prosecution bears the burden of calling an expert to opine on evidence proffered by the defense, nor has he suggested any plausible argument for why this would be the case. Petitioner has therefore failed to establish his entitlement to habeas relief on this basis.

### 5. Ineffective Assistance of Counsel

Petitioner's final procedurally barred claim is that his trial counsel provided ineffective assistance by failing to argue for the admissibility of the Dozier Note, failing to argue that the photographs allegedly shown to the grand jury but not the trial jury were pertinent to the defense, and failing to counter the prosecution's objection to the cross-examination of Investigator Houlihan at the suppression hearing. Again, petitioner failed to raise this argument on direct appeal, despite the fact that it is based in the record and was available to him at the time. Accordingly, the claim is procedurally barred.

The claim is also meritless. "Pursuant to the well-known two-part test of *Strickland v. Washington* . . . a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that his counsel's performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241, (2009)). In this case, petitioner

cannot meet the *Strickland* standard with respect to any of his claims.

First, with respect to petitioner's argument that counsel failed to argue for the admissibility of the Dozier Note, this claim is simply factually inaccurate. The trial record shows that counsel in fact tried to put the Dozier Note in front of the jury. Moreover, and as discussed above, the Dozier Note was properly excluded by the Trial Court as inadmissible hearsay. Thus, even had counsel failed to make this argument, it would not have amounted to ineffective assistance because the Dozier Note was inadmissible. *See, e.g., United States v. Arena*, 180 F.3d 380, 396 (2d Cir.1999) (noting that "[f]ailure to make a meritless argument does not amount to ineffective assistance").

Second, petitioner's claim that counsel should have argued that two photographs allegedly shown to the grand jury but not the trial jury were pertinent to the defense is completely unsubstantiated. As discussed above, petitioner has not offered any argument as to the contents of these allegedly missing photographs, nor has he offered any plausible explanation for how they would have assisted in his defense. "This claim of ineffective assistance is simply too vague and conclusory to state a proper ground for habeas relief." *Powers v. Lord*, 462 F. Supp. 2d 371, 381 (W.D.N.Y. 2006) (denying ineffective assistance of counsel claim based on vague allegations of failure to investigate exculpatory evidence).

Finally, with respect to petitioner's argument that counsel should have countered the prosecution's objection to the scope of

the cross-examination of Investigator Houlihan, again, petitioner's argument is belied by the record. Counsel in fact did offer a counter-argument to the prosecution's objection, explaining why he was seeking to question Investigator Houlihan about his discussion with petitioner regarding the Utica shooting. It is axiomatic that the Court cannot find counsel ineffective for having failed to make an argument when he did in fact make an argument. Moreover, and as discussed below, the Trial Court's ruling with respect to the scope of the cross-examination of Investigator Houlihan was proper and any further argument by counsel would have therefore been meritless.

In sum, petitioner has not shown that he received ineffective assistance of counsel. Accordingly, he cannot show prejudice sufficient to overcome the procedural bar, and habeas relief is not warranted.

**B.  Cross-Examination of Investigator Houlihan**

In addition to the procedurally barred claims discussed above, petitioner has also asserted the properly exhausted claim that the Trial Court improperly limited the scope of defense counsel's cross-examination of Investigator Houlihan at the suppression hearing. This claim is without merit and does not warrant habeas relief.

"Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1), a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States." *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) (internal quotation omitted). "The question is 'not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so.'" *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 367 (E.D.N.Y. 2013) (quoting *Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir. 2002)). "The petition may be granted only if 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

Here, defense counsel sought to cross-examine Investigator Houlihan regarding the questions he asked petitioner about the Utica shooting. The prosecution objected on relevancy grounds, defense counsel argued that the questioning was relevant because it immediately preceded petitioner's receipt of his *Miranda* warnings and subsequent statement to police, and the Trial Court sustained the objection. Under New York law, "[i]t is well settled that [t]he scope of cross-examination is within the sound discretion of the trial court." *People v. Baker*, 294 A.D.2d 888, 889 (4th Dep't 2002) (internal quotation omitted). The trial court may properly limit cross-examination where the defendant fails "to establish the relevance and materiality of the proposed testimony." *People v. Weiss*, 269 A.D.2d 267, 268 (1st Dep't 2000). In this case, although petitioner argues that continued cross-examination of Investigator Houlihan could have potentially revealed information

calling into question the voluntariness of his statement to police, this argument is speculative at best. Petitioner has not suggested that Investigator Houlihan in fact offered him any sort of benefit in return for cooperation, nor has he identified any other facts that undermine the voluntariness of his statement. Under these circumstances, the Appellate Division's determination the Trial Court did not abuse its discretion in sustaining the prosecution's objection was an appropriate application of New York law.

Petitioner has not argued, nor could he successfully show, that New York's law regarding the scope of cross-examination is arbitrary or disproportionate to the purpose it is designed to serve. He has therefore failed to show that the Appellate Division's decision was contrary to or an unreasonable application of established Supreme Court precedent. Accordingly, habeas relief is not warranted on this ground.

## IV. Conclusion

For the foregoing reasons, the petition (Docket No. 1) is denied and dismissed. No certificate of appealability shall issue because petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether th[is] . . . [C]ourt was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith, and therefore the Court

denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 445-46 (1962). Any application for leave to appeal *in forma pauperis* must be made to the Second Circuit Court of Appeals in accordance with Fed. R. App. P. 24(a)(1), (4), & (5). The Clerk of the Court is instructed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


                                        s/Michael A. Telesca

                              _____
                              HONORABLE MICHAEL A. TELESCA
                              United States District Judge
DATED:     Rochester, New York
           October 31, 2017